THE JIMMERSON LAW FIRM, P.C.
JAMES M. JIMMERSON, ESQ.
Nevada State Bar No. 12599
jmj@jimmersonlawfirm.com
415 South Sixth Street, Suite 100
Las Vegas, Nevada 89101
Telephone:   702-388-7171
Facsimile:   702-367-1167

KATTEN MUCHIN ROSENMAN LLP
Jeffrey A. Wakolbinger (*pro hac vice* to be submitted)
jeff.wakolbinger@katten.com
525 W. Monroe St.
Chicago, IL 60661
Telephone:   312-902-5200

*Attorneys for Plaintiff*
*Jump Operations, LLC*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| JUMP OPERATIONS, LLC, | Case No.: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| RICHARD WRIGHT MERRYMAN, | |
| Defendant. | |

Plaintiff Jump Operations, LLC ("Plaintiff"), by and through its attorneys of record, hereby brings the following complaint against Defendant Richard Wright Merryman ("Defendant") and alleges as follows:

## Nature of Dispute

1. This is an action for breach of contract and for specific performance. Defendant owns the Internet domain name, www.wormhole.com. Plaintiff, who uses the mark WORMHOLE in connection with a blockchain project, approached Defendant with an offer to purchase that domain name. Defendant countered with a "firm" price of $50,000. Plaintiff accepted. At that point, the domain agent, in accordance with its policies, provided escrow instructions to the buyer (Plaintiff) and the seller (Defendant).

- 1 -

1  Instead of complying with those instructions, Defendant reneged, refusing to sell the
2  domain name at the agreed-upon price. Plaintiff therefore brings this action for specific
3  performance of the sales contract and asks this Court to order the transfer of this unique
4  asset from Defendant's registrar to a registrar of Plaintiff's choice, for the previously
5  agreed price of $50,000. Plaintiff also seeks recovery of its attorneys' fees incurred as a
6  result of having to enforce this agreement.

## Parties

2.  Plaintiff Jump Operations, LLC, is a limited liability company organized under the laws of Delaware with a principal place of business in Chicago, IL. The sole member of Jump Operations, LLC, is Jump Financial, LLC, a limited liability company organized under the laws of Delaware with a principal place of business in Chicago, IL.

3.  No members of Jump Operations, LLC, or Jump Financial, LLC, reside in Nevada.

4.  On information and belief, Defendant Richard Wright Merryman is a resident of Nevada with an address at 4800 Westmont Ave., Pahrump, NV 89061.

## Jurisdiction and Venue

5.  This action concerns the breach of a contract for purchase of a unique domain name, which Plaintiff values in excess of $75,000 and which Defendant has most recently priced at $200,000.

6.  Thus, the amount in controversy exceeds the value of $75,000, exclusive of interest and costs, and this is a dispute between citizens of different states. This Court therefore has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(a)(1).

7.  This Court has personal jurisdiction over Defendant, who resides in the state of Nevada.

8.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## General Allegations

9.  The Wormhole Network is a blockchain project initially developed by

- 2 -

1   Certus One and other contributors. In 2021, affiliates of Plaintiff acquired Certus One, and employees of Plaintiff are actively involved in the continued development and growth of the Wormhole Network.

10.   In June 2021, Plaintiff decided to purchase the domain name www.wormhole.com (the "Wormhole Domain"), which at that time resolved to a landing page stating, "THIS WEB SITE OFFERS NO SERVICES TO THE PUBLIC."

11.   Acting through an individual employee, Plaintiff made an offer to purchase the Wormhole Domain through DomainAgents, a third-party website "created to assist domain owners and buyers through the often daunting process of domain negotiations and transfers." *See* https://domainagents.com/about-us (last visited Mar. 29, 2022).

12.   DomainAgents acts as an intermediary between potential buyers and sellers of domain names. A buyer can make an offer through DomainAgents, who will then locate the domain owner and present the buyer's offer. If the domain owner chooses to engage in negotiations, it does so directly with the potential buyer by exchanging messages through the DomainAgents platform. As an incentive, DomainAgents pays a $10 credit to any domain owner who responds to an offer.

13.   If an agreement is reached between a seller and a buyer, DomainAgents facilitates transfer of the domain name and money via Escrow.com. The buyer is responsible for all escrow fees and a sliding commission to DomainAgents.

14.   All sellers who respond to an offer presented by DomainAgents agree to abide by DomainAgents' terms, which provide, among other things: "Agreements are legally binding through the completion of the transaction." A true and correct copy of DomainAgents' Terms and Conditions is attached hereto as **Exhibit 1**.

15.   The DomainAgents website advises buyers and sellers that negotiations are legally binding and that "[i]f you make an offer that is accepted by the other party, or accept an offer made by the other party, you are contractually obligated to complete the transaction. If you then subsequently fail to complete the transaction, you may expose yourself to legal action." *See*

- 3 -

https://domainagents.freshdesk.com/support/solutions/articles/5000523212-are-negotiations-legally-binding- (last visited Mar. 29, 2022).

16. On June 29, 2021, Plaintiff presented an initial offer through DomainAgents to purchase the Wormhole Domain for $2,500.

17. On July 1, 2021, Defendant responded to Plaintiff's offer with a counteroffer for a "firm US$50,000." Specifically, Defendant presented the counteroffer with the following comment, "The price for wormhole.com is a firm US$50,000. –Dick-"

18. On July 1, 2021, Plaintiff accepted Defendant's counteroffer to sell the Wormhole Domain for $50,000, and the DomainAgents platform indicated "Agreement Reached."

19. After DomainAgents provided Escrow instructions to the parties, Defendant, on July 12, 2021, reneged on the transaction agreed to at his "firm" counteroffer price, stating, "Nope, sorry, I changed my mind. This was too easy, I'm either leaving a lot of money on the table or it is a scam. Either way, no sale. If you want to make a reasonable offer, then you are encouraged to do so.-Dick-"

20. On July 19, 2021, after further efforts by Plaintiff to enforce the agreement and move the transaction to escrow, Defendant replied, "Yeah, good luck with legal action. The price is US$100,000.-Dick-"

21. Defendant's repudiation of the contract was in bad faith.

22. Due to Defendant's bad-faith repudiation of the contract for the sale and transfer of the Wormhole Domain, Plaintiff was unable to send the purchase monies to escrow.

23. A true and correct printout of the messages exchanged between Defendant and Plaintiff's employee/agent through the DomainAgents platform is attached hereto as **Exhibit 2**.

24. On July 21, 2021, in-house counsel for Plaintiff sent a letter to Defendant regarding his breach of the agreement to sell the Wormhole Domain for $50,000 and demanding that Defendant accept the agreed upon amount and transfer the domain

1  name. Defendant failed to respond to this letter.

2      25.    In an effort to obtain the Wormhole Domain without necessitating the
3  filing of a lawsuit, Plaintiff then approached Defendant through a third-party agent,
4  who offered more than the $50,000 purchase price to acquire the Wormhole Domain.
5  Defendant responded with a demand of $200,000.

6      26.    Defendant's repudiation of the contract with Plaintiff has caused Plaintiff
7  substantial harm, for which legal relief alone would be inadequate. There is only one
8  Wormhole Domain in existence. As such, money damages alone will not constitute
9  adequate relief for Plaintiff. Specific performance is necessary to provide Plaintiff with
10 adequate relief due to the unique nature of the Wormhole Domain.

11     27.    In the time since the parties reached their agreement to transfer the
12 Wormhole Domain, the operation and growth of the Wormhole platform under the
13 Wormhole mark has continued and increased, thereby enhancing the value of the
14 Wormhole Domain.

15     28.    Defendant has taken no steps to finalize the agreed transaction and
16 continues to operate in bad faith with respect to the transaction.

17     29.    Interim injunctive relief to preserve and maintain the Wormhole Domain
18 may be necessary to ensure that Defendant does not sell, transfer, assign, hypothecate,
19 encumber, or otherwise take steps to defeat any future order for specific performance.

## FIRST CAUSE OF ACTION:

## BREACH OF CONTRACT – SPECIFIC PERFORMANCE

22     30.    Plaintiff incorporates the allegations in paragraphs 1–29 as if fully stated
23 herein.

24     31.    Plaintiff and Defendant entered into a valid written contract for the sale
25 of the Wormhole Domain. Specifically, Defendant offered to sell the domain at a price of
26 $50,000, and Plaintiff accepted the offer.

27     32.    The contract was supported by valid consideration.

28     33.    Plaintiff took all possible steps to pay the full purchase price through

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

Escrow.com and thus performed its obligations under the contract to the fullest extent possible given Defendant's misconduct. Plaintiff remains ready, willing, and able to perform all obligations under the sales agreement with Defendant by submitting the agreed upon funds to Escrow.com to complete the transaction.

34. Defendant breached the contract by refusing DomainAgents' escrow instructions, and in so doing, refusing to transfer the Wormhole Domain.

35. Plaintiff has been harmed by Defendant's breach because it has been deprived of an asset valued in excess of $75,000.

36. The Wormhole Domain is unique. Plaintiff cannot purchase that domain from any other source. As such, damages are insufficient to compensate Plaintiff for the harm caused by Defendant's breach, and Plaintiff demands specific performance of the contract.

37. As a direct, natural, and proximate result of Defendant's bad-faith misconduct, Plaintiff has been forced to retain an attorney to prosecute this action and seek equitable relief in the form of specific performance. Plaintiff has therefore been damaged in the amount of fees and costs expended to retain the services of its attorneys and is entitled to an award of reasonable attorney's fees as special damages.

## SECOND CAUSE OF ACTION:

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

38. Plaintiff incorporates the allegations in paragraphs 1–37 as if fully stated herein.

39. Upon responding to Plaintiff's initial offer to purchase the Wormhole Domain, Defendant owed Plaintiff an implied duty of good faith and fair dealing.

40. By reneging on the agreed transaction and demanding increasingly higher monetary terms, Defendant breached this duty.

41. As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff has been harmed by Defendant's breach because it has been deprived of an asset valued in excess of $75,000.

42. The Wormhole Domain is unique. Plaintiff cannot purchase that domain from any other source. As such, damages alone are insufficient to compensate Plaintiff for the harm caused by Defendant's breach.

## THIRD CAUSE OF ACTION:

## DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201

43. Plaintiff incorporates the allegations in paragraphs 1–42 as if fully stated herein.

44. A justiciable controversy has arisen between the parties hereto regarding the Defendant's bad-faith repudiation of his contract with Plaintiff over the sale and transfer of the Wormhole Domain.

45. A genuine dispute exists concerning Defendant's conduct toward Plaintiff. As such, Plaintiff respectfully requests that this Court issue declaratory judgment in its favor declaring: (1) that Defendant has not fulfilled his obligation to open escrow to complete the transfer of the Wormhole Domain to Plaintiff; (2) that Defendant shall transfer the Wormhole Domain to Plaintiff subject to the terms of the parties' contract; and (3) that upon the closing of the transfer of the Wormhole Domain to Plaintiff, Plaintiff shall be the sole owner of the Wormhole Domain.

46. As a direct, natural, and proximate result of Defendant's bad-faith misconduct, Plaintiff has been forced to retain an attorney to prosecute this action and seek declaratory relief. Plaintiff has therefore been damaged in the amount of fees and costs expended to retain the services of its attorneys and is entitled to an award of reasonable attorney's fees as special damages.

**WHEREFORE**, Plaintiff, Jump Operations, LLC, prays for judgment against Defendant, Richard Wright Merryman, as follows:

1) For Defendant's specific performance of his agreement to sell the Wormhole Domain to Plaintiff for $50,000;

2) For an order directing Defendant's registrar to transfer the Wormhole Domain to a registrar of Plaintiff's choice and for Defendant to comply with all instructions necessary to effect that transfer;

3) For declaratory judgment as requested above;

4) For injunctive relief as needed to preserve and maintain the Wormhole Domain;

5) For an order requiring Defendant to pay Plaintiff's reasonable attorneys' fees incurred in enforcing specific performance of the sales contract for the Wormhole Domain;

6) For an award of interest and costs as permitted by law; and

7) For such other relief as the Court deems just and proper.

DATED April 6, 2022.

THE JIMMERSON LAW FIRM, P.C.

*/s/   James M. Jimmerson, Esq.*
JAMES M. JIMMERSON, ESQ.
Nevada Bar. No. 12599
415 S. Sixth Street, Suite 100
Las Vegas, Nevada 89101
*Attorney for Plaintiff Jump Operations, LLC*