THE JIMMERSON LAW FIRM, P.C.
JAMES M. JIMMERSON, ESQ.
Nevada State Bar No. 12599
jmj@jimmersonlawfirm.com
415 South Sixth Street, Suite 100
Las Vegas, Nevada 89101
Telephone: 702-388-7171
Facsimile: 702-367-1167

KATTEN MUCHIN ROSENMAN LLP
Jeffrey A. Wakolbinger (*pro hac vice* to be submitted)
jeff.wakolbinger@katten.com
525 W. Monroe St.
Chicago, IL 60661
Telephone: 312.902-5200

*Attorneys for Plaintiff*
*Jump Operations, LLC*

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JUMP OPERATIONS, LLC,

Plaintiff,

v.

RICHARD WRIGHT MERRYMAN,

Defendant.

Case No.: 2:22-cv-00575-GMN-DJA

**EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER WITHOUT NOTICE IN ANTICIPATION OF FUTURE REQUEST FOR PRELIMINARY INJUNCTION**

COMES NOW, Plaintiff Jump Operations, LLC ("Jump") by and through its counsel of record and hereby submits this Emergency Motion for Temporary Restraining Order Without Notice in Anticipation of Future Request for Preliminary Injunction (the "Motion") against Defendant Richard Wright Merryman ("Merryman").

This Motion is based upon the pleadings in this action, the following memorandum of points and authorities, the declarations of Jonathan Marcus Jeffrey A. Wakolbinger, Esq., and James M. Jimmerson, Esq.,[1] the exhibits supplied herewith and

[1] The Declaration of James M. Jimmerson contains the certifications required under LR 7-4 concerning emergency motions.

any arguments made by counsel during any hearing on the Motion. A proposed Temporary Restraining Order is attached as Exhibit 1 to this Motion.

DATED April 7, 2022.

THE JIMMERSON LAW FIRM, P.C.

*/s/ James M. Jimmerson, Esq.*
JAMES J. JIMMERSON, ESQ.
Nevada Bar No. 000264
JAMES M. JIMMERSON, ESQ.
Nevada Bar. No. 12599
415 S. Sixth Street, Suite 100
Las Vegas, Nevada 89101
(702) 388-7171
*Attorneys for Plaintiff Jump Operations, LLC*

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

**INDEX OF EXHIBITS**

| Exhibit | Exhibit Description |
|---|---|
| 1 | [Proposed] Temporary Restraining Order |
| 2 | Declaration of Jonathan Marcus |
| 3 | Declaration of Jeffrey A. Wakolbinger, Esq. |
| 4 | Printout of website at http://wormhole.com |
| 5 | Domain registration record for wormhole.com |
| 6 | Printout from "About Us – Domain Agents" |
| 7 | Printout from "Buying Domain Names with DomainAgents" |
| 8 | Printout from "Selling Domain Names with DomainAgents" |
| 9 | Printout from DomainAgents Support FAQs |
| 10 | DomainAgents Terms and Conditions |
| 11 | Printout from DomainAgents Support FAQs |
| 12 | July 1, 2021 email from DomainAgents to J. Marcus |
| 13 | Printout of Messages Exchanged Through DomainAgents Platform |
| 14 | Letter from Jump to Merryman Dated July 21, 2021 |
| 15 | Screen shot of DomainAgents Negotiation History |
| 16 | Declaration of James M. Jimmerson, Esq. |

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This case concerns a simple matter: Defendant Merryman's unabashed failure to deliver a unique Internet domain name to Plaintiff Jump in accordance with a valid contract between the parties. Merryman owns the domain name, wormhole.com (the "Wormhole Domain"). He entered into a contract with Plaintiff Jump for the sale of that domain name at a set price. When Jump tendered payment, Merryman reneged, breaching the contract and causing harm to Jump. Jump filed this action seeking specific performance of the contract. It simply wants Defendant Merryman to accept payment and transfer the Wormhole Domain to Jump pursuant to the parties' agreement.

Jump's reason for filing this Motion is simple, as well. If Merryman—who at every step since entering into the contract has demonstrated bad faith in his dealings with Jump—were to transfer the Wormhole Domain to another party, Jump would be deprived of the unique and irreplaceable asset it contracted to purchase. Jump therefore seeks an injunction that would prohibit Merryman from selling, transferring, or encumbering the Wormhole Domain pending final resolution of this dispute. Jump initially submits this motion *ex parte* and without notice to Merryman in order to prevent a situation where Merryman, upon receiving notice of this action, could transfer the Wormhole Domain to another registrar or registrant prior to an opportunity for Jump to be heard on its motion for preliminary injunction. A temporary restraining order will preserve the status quo until the parties can be heard, in anticipation of a further request to issue a preliminary injunction to preserve the status quo through resolution of this dispute.

## II. STATEMENT OF RELEVANT FACTS

Jump is actively involved in the continued development and growth of a blockchain project called the "Wormhole Network." (Ex. 2, Declaration of Jonathan Marcus ("Marcus Decl.") ¶ 2.) In June 2021, Jump decided to purchase the Wormhole Domain for use in connection with the Wormhole Network. (Marcus Decl. ¶ 3.) At the

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

time, the Wormhole Domain resolved to a landing page, stating, "THIS WEB SITE OFFERS NO SERVICES TO THE PUBLIC." (Marcus Decl. ¶ 3.) The Wormhole Domain currently resolves to that same webpage. (Ex. 3, Declaration of Jeffrey A. Wakolbinger, Esq. ("Wakolbinger Decl.") ¶ 2 & Ex. 4.)

The Wormhole Domain is registered with Network Solutions, LLC, a domain name registrar. (Wakolbinger Decl. ¶ 2 & Ex. 5.) Acting through an individual employee, Jump made an offer to purchase the Wormhole Domain through DomainAgents (Marcus Decl. ¶ 4), a third-party website "created to assist domain owners and buyers through the often daunting process of domain negotiations and transfers" (Wakolbinger Decl. ¶ 4 & Ex. 6). As described on its website, DomainAgents acts as an intermediary between potential buyers and sellers of domain names. (Wakolbinger Decl. ¶ 4 & Ex. 6.) A buyer can make an offer through DomainAgents, who will then locate the domain owner and present the buyer's offer; if the domain owner chooses to engage in negotiations, it does so directly with the potential buyer by exchanging messages through the DomainAgents platform. (Wakolbinger Decl. ¶ 5 & Ex. 7.) As an incentive, DomainAgents pays a $10 credit to any domain owner who responds to an offer. (Wakolbinger Decl. ¶ 6 & Ex. 8.) If an agreement is reached between a seller and a buyer, DomainAgents facilitates transfer of the domain name and money via Escrow.com. (Wakolbinger Decl. ¶ 7 & Ex. 9.) All sellers who respond to an offer presented by DomainAgents agree to abide by DomainAgents' terms, which provide, among other things: "Agreements are legally binding through the completion of the transaction." (Wakolbinger Decl. ¶¶ 8–9 & Exs. 10, 11.)

On June 29, 2021, Jump presented an initial offer through DomainAgents to purchase the Wormhole Domain for $2,500. (Marcus Decl. ¶¶ 4,6 & Ex. 13.) On July 1, 2021, Merryman responded to Jump's offer with a counteroffer: "The price for wormhole.com is a firm US$50,000. –Dick-" (Marcus Decl. ¶ 5 & Ex. 13.[2]) On July 1,

[2] A court may consider hearsay evidence in the context of a preliminary injunction, particularly where the need for a quick determination "makes it difficult to obtain affidavits from persons

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

2021, Jump accepted Merryman's counteroffer to sell the Wormhole Domain for $50,000, and the DomainAgents platform indicated, "Agreement Reached." (Marcus Decl. ¶¶ 5, 9 & Exs. 13, 15.)

After DomainAgents provided escrow instructions to the parties, Merryman, on July 12, 2021, reneged on the deal, stating, "Nope, sorry, I changed my mind. This was too easy, I'm either leaving a lot of money on the table or it is a scam. Either way, no sale. If you want to make a reasonable offer, then you are encouraged to do so. –Dick." (Marcus Decl. ¶¶ 6, 7 & Exs. 12, 13.) Jump was notified by DomainAgents that Merryman was not complying with instructions to move the transaction into escrow and that Merryman was thus in breach of his sales agreement. (Marcus Decl. ¶ 6 & Ex. 13.) On July 19, 2021, after further efforts by Jump to enforce the agreement and move the transaction to escrow, Defendant replied, "Yeah, good luck with legal action. The price is US$100,000.-Dick." (Ex. 13.)

On July 21, 2021, Jump's in-house counsel sent a letter to Merryman regarding his breach of the agreement to sell the Wormhole Domain for $50,000 and demanding that he accept the agreed-upon amount and transfer the domain name. (Marcus Decl. ¶ 8 & Ex. 14.) Merryman did not respond. (Marcus Decl. ¶ 8.)

## III. LEGAL ARGUMENT

### A. Legal Standard for TRO / Preliminary Injunctions

The standard for issuing a temporary restraining order ("TRO") is the same as that for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *Ali v. United States*, 932 F. Supp. 1206, 1208 (N.D. Cal. 1996). Additionally, a TRO may be issued without notice to the adverse party if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party

---

who would be competent to testify at trial." *Flynt Distr. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984). If this case proceeds to discovery, Jump will subpoena a witness from DomainAgents to authenticate the correspondence. In any event, Merryman's own communications are statements of a party opponent and thus excluded from the definition of hearsay under the Federal Rules of Evidence. See Fed. R. Evid. 801(d)(2).

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."[3] Fed. R. Civ. P. 65(b)(1). Such TROs without notice may not remain in effect for more than 14 days (absent an extension for good cause or the adverse party's consent). Fed. R. Civ. P. 65(b)(2). The purpose of a TRO "is to preserve the status quo before a preliminary injunction hearing may be held." *Ditech Fin. LLC v. Am. W. Vill. II Owners Ass'n*, No. 2:17-cv-2164-JCM-GWF, 2017 WL 3610559, at *2 (D. Nev. Aug. 22, 2017).

In all cases, a district court should enter preliminary injunctive relief only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). Such a showing requires that plaintiff establish it is "likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *see also Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) ("Under *Winter*, [parties] seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest").

In evaluating the four factors, the court may apply a sliding-scale test, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

General legal authority concerning each of the four elements is set forth below.

**1. Likelihood of Success on the Merits**

"[T]he elements of a breach of contract claim in Nevada are (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach.

[3] The certification required by Fed. R. Civ. P. 65(b)(2)(B) is set forth at paragraph 10 of the concurrently filed Declaration of Jeffrey A. Wakolbinger, Esq.

*Contreras v. Am. Fam. Mut. Ins. Co.*, 135 F. Supp. 3d 1208, 1227 (D. Nev. 2015) (citing *Richardson v. Jones*, 1 Nev. 405, 409 (1865); *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 899 (9th Cir. 2013)).

**2. Irreparable Harm**

Irreparable harm includes "a viable threat of serious harm which cannot be undone." *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983) (internal citations omitted). "[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award," but evidence of loss of goodwill is sufficient. *Las Vegas Sands Corp. v. Fan Yu Ming*, 360 F. Supp. 3d 1072, 1079 (D. Nev. 2019) (citations omitted). A loss of business opportunities may also constitute irreparable harm. *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (citations omitted).

**3. Balance of Hardships**

Before issuing a preliminary injunction, a court must weigh "the competing claims of injury and … consider the effect on each party of the granting or withholding of the requested relief." *Las Vegas Sands Corp.*, 360 F. Supp. 3d at 1081 (quoting *Amoco Prod. Co. v. Village of Gambell, AK*, 480 U.S. 531, 542 (1987)).

**4. Public Interest**

"The public interest analysis for the issuance of a preliminary injunction requires [the court] to consider 'whether there exists some critical public interest that would be injured by the grant of preliminary relief.'" *Indep. Living Ctr. of So. Cal., Inc. v. Maxwell–Jolly*, 572 F.3d 644, 659 (9th Cir.2009) (quoting *Hybritech Inc. v. Abbott Lab.*, 849 F.2d 1446, 1458 (Fed. Cir. 1988)).

**B. The Court Should Issue a Temporary Restraining Order**

This case—involving an unambiguous breach of contract after counteroffer and acceptance, an irreplaceable asset, and demonstrated bad faith by the Defendant—is a textbook example of the appropriate circumstance of the issuance of a TRO. As described herein, a TRO should be entered because: (1) there is a likelihood that Jump will succeed

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

on the merits of its claims; (2) Jump is likely to suffer irreparable harm without the issuance of the requested injunctive relief; (3) the balance of hardships greatly favors the issuance of the requested injunctive relief; and (4) the public interest would best be served by the issuance of the requested injunction.

**1. Jump is Likely to Succeed on the Merits of Its Claim for Breach of Contract.**

"Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005). Each of these elements existed here: After accepting Jump's invitation through DomainAgents to come to the bargaining table, Merryman made a firm offer to sell the Wormhole Domain for $50,000. Jump accepted the offer. The agreement was supported by valid, bargained-for consideration: an exchange of something of value from Merryman (the Wormhole Domain) for something of value from Jump ($50,000).

There is also no question that Merryman breached the agreement. After Jump accepted the firm offer Merryman put in writing, Merryman admitted—also in writing—that he "changed [his] mind." (Marcus Decl. ¶ 7 & Ex. 13.) He then refused to enter into the escrow transaction as instructed by the sales agent. Merryman still owns the domain name he agreed to transfer to Jump and thus has not performed under the contract.

Jump is likely to succeed in showing it was harmed by Merryman's breach of the sales contract. There is only one Wormhole Domain. Jump cannot get this domain name from any source other than Merryman.

**2. Jump Is Likely to Be Irreparably Harmed Unless a TRO is Issued.**

The Wormhole Domain is unique. There is only one <wormhole.com>. If Merryman transfers it to anyone other than Jump, or in any way encumbers it during the pendency of this proceeding, Jump will be irreparably harmed because Jump may not be able to acquire the Wormhole Domain from a third-party purchaser at the agreed-

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

upon price (or at all) and there is no other source from which Jump can obtain the Wormhole Domain.

Indeed, courts have found the potential for a party to transfer a disputed domain to another registrant during the pendency of a case could cause irreparable harm and supports the issuance of a preliminary injunction. *See, e.g.*, *Las Vegas Sands Corp. v. Fan Yu Ming*, 360 F. Supp. 3d 1072, 1080 (D. Nev. 2019) ("Irreparable harm is also implicated where there is a potential for an infringing defendant to transfer domain names to a different registrar outside of a court's jurisdiction."); *Hakkasan LV, LLC v. Tsang Hang Wang*, No. 2:13-cv-01122-GMN, 2013 WL 3944175, at *3 (D. Nev. July 30, 2013) ("Plaintiffs will suffer irreparable injury if the Court does not require the domain name registrar … to lock the infringing … domain name pending litigation of this matter. … because Defendants could transfer the Infringing Domain Name to another registrant or registrar.").

Here, a transfer of the Wormhole Domain to a third party would create irreparable harm to Jump. The Wormhole Network project is named and publicly disclosed. (Marcus Decl. ¶ 10.) The most logical domain name for that project is the one that matches the name of the project and the goodwill built up in that project: wormhole.com. (Marcus Decl. ¶ 10.) If Merryman were to transfer the Wormhole domain name to a third party, that party may choose not to sell the domain name to Jump, and Jump would have no recourse against a subsequent purchase who was not a party to the agreement breached by Merryman. (Marcus Decl. ¶ 10.)

**3. The Balance of Hardships Weighs Heavily in Jump's Favor.**

As explained above, without an injunction that would prohibit Merryman from transferring or encumbering the Wormhole Domain during the pendency of this suit, Jump risks forever losing the consideration bargained for in its agreement with Merryman. On the other hand, Merryman's bargained-for consideration would not be put at risk by the issuance of an injunction. Through this lawsuit, Jump is seeking to provide Merryman with the full consideration promised for the Wormhole Domain.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

Practically speaking, the only way an interim injunction could impose any hardship on Mr. Merryman would be if, during the pendency of this dispute, he were presented with an offer from a third party to purchase the Wormhole Domain at a price greater than the $50,000 already accepted by Jump. This possibility highlights the need for a preliminary injunction. Having contracted with Jump to sell the Wormhole Domain at a set price and then reneging on that deal at the point when Jump was tendering payment, Merryman cannot be permitted to wreak further mischief by trying to dispose of or encumber the bargained for consideration pending final resolution of this dispute.

### 4. The Public Interest Supports Jump's Request for Injunctive Relief.

There is no "critical public interest" that would be injured if Merryman were prohibited from transferring the Wormhole Domain pending final resolution of this dispute. *See Indep. Living Ctr. Of So. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d at 659.

In fact, the public interest is best served by preserving the consideration of the contract between Merryman and Jump because the public interest strongly favors enforcing contracts. *See, e.g.*, *BZ Clarity Tent Sub LLC v. Ross Mollison Int'l Party, Ltd.*, No. 2:15-cv-1065-JCM-CWH, 2015 WL 3657249, at *7 (D. Nev. June 12, 2015) ("The right to contract is fundamental… An injunction in this instance protects the public's interest in the integrity and enforceability of contracts."); *NAC Found., LLC v. Jodoin*, No. 2:16-cv-1039-GMN-VCF, 2016 WL 4059648, at *2 (D. Nev. July 26, 2016) (issuing preliminary injunction in action for breach of purchase agreement in part because "[a]n injunction in this instance protects the public's interest in the integrity and enforceability of contracts.").

## IV. CONCLUSION

Based upon the foregoing, Jump respectfully requests that the Court find that a temporary restraining order is necessary and should be issued (1) to enjoin Defendant Merryman from selling, transferring, or otherwise encumbering the Wormhole Domain, and (2) to lock the Wormhole Domain with the registrar, Network Solutions, LLC. Doing

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

so will preserve the status quo, preventing irreparable harm to Jump with no significant burden to Merryman. This TRO should be issued with a view toward issuing a preliminary injunction prohibiting Defendant Merryman from disposing of the asset that is the subject of this dispute while the matter remains pending.

A proposed Temporary Restraining Order is attached as Exhibit 1.

DATED April 7, 2022.

THE JIMMERSON LAW FIRM, P.C.

*/s/ James M. Jimmerson, Esq.*
JAMES M. JIMMERSON, ESQ.
Nevada Bar. No. 12599
415 S. Sixth Street, Suite 100
Las Vegas, Nevada 89101
(702) 388-7171
*Attorneys for Plaintiff Jump Operations, LLC*