UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Jump Operations, LLC, ) <br> ) <br>            Plaintiff, ) <br> vs. ) <br> ) <br> Richard Wright Merryman, ) <br> ) <br>            Defendant. ) <br> ) | Case No.: 2:22-cv-00575-GMN-DJA <br><br> **ORDER** |

Pending before the Court is the *ex parte* Emergency Motion for Temporary Restraining Order, (ECF No. 7), filed by Plaintiff Jump Operations, LLC. ("Jump Operations"). For the reasons set forth below, Plaintiff's Motion for Temporary Restraining Order is **GRANTED.**

**I.     BACKGROUND**

This case arises out of the sale of an internet domain name. Defendant Richard Merryman ("Defendant") owns the internet domain name "www.wormhole.com" (the "Wormhole Domain"), which he listed with domain name registrar Network Solutions, LLC. (Compl. ¶ 1, ECF No. 1); (Mot. Temporary Restraining Order "TRO" 5:5–6, ECF No. 7). Offers can be made to purchase domain names through DomainAgents, a third-party website created to assists domain owners and buyers "through the often daunting process of domain negotiations and transfers." (Compl. ¶ 11); (*About Domain Agents*, https://domainagents.com/about-us, (last visited April 8, 2022)). DomainAgents allows a buyer to make on offer on a domain name, which it then communicates to the domain owner. (Compl. ¶ 12). If the domain owner chooses to engage in negotiations, it does so directly with the potential buyer by exchanging messages through DomainAgents' platform. (*Id.*). When an agreement is reached

between a seller and buyer, DomainAgents facilitates payment and transfer of the domain name through the service Escrow.com. (*Id.* ¶ 13).

Plaintiff is involved in the development of a blockchain project entitled the "Wormhole Network." (*Id.* ¶¶ 1, 9). On June 29, 2021, Plaintiff offered Defendant $2,500 to purchase the Wormhole Domain. (Compl. ¶ 16); (Printout Messages at 2, Ex. 13 to TRO, ECF No. 7-13). On July 1, 2021, Defendant counteroffered for $50,000. (Compl. ¶ 17); (Printout Messages at 2, Ex. 13 to TRO, ECF No. 7-13). Plaintiff accepted Defendant's counteroffer to sell the Wormhole Domain for $50,000. (Compl. ¶ 18). After DomainAgents provided escrow instructions to the parties, Defendant reneged on the deal, stating:

> Nope, sorry, I changed my mind. This was too easy, I'm either leaving a lot of money on the table or it is a scam. Either way no sale. If you want to make a reasonable offer, then you are encouraged to do so.

(*Id.*); (Printout Messages at 1, Ex. 13 to TRO, ECF No. 7-13). DomainAgents notified Plaintiff that Defendant was not complying with instructions to move the transaction into escrow, and thus, that Defendant was in breach of the purchase agreement. (TRO 6:8–13); (Marcus Decl. ¶ 6, Ex. 2 to TRO, ECF No. 7-2). On July 21, 2021, Plaintiff's in-house counsel sent a letter to Defendant demanding that he accept the agreed-upon amount and transfer the domain name. (Compl. ¶ 24); (Letter, Ex. 14 to TRO, ECF No. 7-14). Defendant did not respond. (*Id.*).

Plaintiff filed the present case, alleging three causes of action: (1) breach of contract and specific performance; (2) breach of implied covenant of good faith and fair dealing; and (3) declaratory judgment pursuant to 28 U.S.C. § 2201. (Compl. ¶¶ 30–46). Plaintiff filed its Motion for Temporary Restraining Order, related to the breach of contract claim only, which asks the court to: (1) restrain Defendant from selling the Wormhole Domain to a third party during the pendency of this case; and (2) lock the Wormhole Domain with the registrar Network Solutions, LLC. (TRO 11:24–12:4).

## II. LEGAL STANDARD

The same legal standard applies to both temporary restraining orders and preliminary injunctions sought pursuant to Federal Rule of Civil Procedure 65. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that the analysis applied to temporary restraining orders and preliminary injunctions is "substantially identical"). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A court may grant such relief only upon a petitioner's showing of (1) likelihood of success on the merits, (2) likelihood of irreparable harm in the absence of preliminary relief, (3) the balance of equities weighs in petitioner's favor, and (4) an injunction is in the public interest. *Id.* at 20. A temporary restraining order is distinguished by its "underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974); *see also* Fed. R. Civ. P. 65(b) (limiting temporary restraining orders to 14 days unless extended for good cause, and providing for expedited hearings on preliminary injunctions).

"The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citing 11 C. Wright and A. Miller, Federal Practice and Procedure, Civil, § 2949 at 471 (1973)).

## III. DISCUSSION

The Court, having considered the Complaint, Plaintiff's Motion, supporting affidavits, and accompanying exhibits, finds that Plaintiff has met each of the *Winter* factors as to its

breach of contract claim.  Thus, the issuance of a limited temporary restraining order prohibiting Defendant from selling the Wormhole Domain and locking it with the registrar is appropriate.

### A.  NOTICE

A court may issue an *ex parte* temporary restraining order only if "the movant's attorney certifies in writing any efforts to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).  Furthermore, the movant must supply "specific facts in an affidavit or verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).

Here, Plaintiff sufficiently demonstrates that notice and further delay will cause immediate and irreparable injury.  On July 21, 2021, Plaintiff's counsel directly contacted Defendant to attempt to resolve the dispute, but Defendant failed to respond. (*See* Marcus Decl. ¶¶ 7–8, Ex. 2 to TRO, ECF No. 7-2); (Letter, Ex. 14 to TRO, ECF No. 7-14).  Plaintiff explains that internet domain names are unique, and thus, Plaintiff needs ownership of the Wormhole Domain because it is an exact match for the name of the Wormhole Network project. (*See* Marcus Decl. ¶ 10, Ex. 2 to TRO); (TRO 4:11–23).  Plaintiff argues that it will be harmed if Defendant were to transfer the Wormhole Domain to another party because it would then be deprived of a unique and irreplaceable asset. (*See* Marcus Decl. ¶ 10, Ex. 2 to TRO); (TRO 4:11–23).  Additionally, Plaintiff explains that it submitted this Motion *ex parte* because "upon receiving notice of this action, [Defendant] could transfer the Wormhole Domain to another registrar or registrant prior to an opportunity for [Plaintiff] to be heard on its Motion for Preliminary Injunction," and "Plaintiff would have no recourse against a subsequent purchas[er] who was not a party to the agreement breached by [Defendant]." (TRO 4:16–20,

10:18–21). Accordingly, Plaintiff has shown that immediate and irreparable harm will result if Defendant is notified of the temporary restraining order.

### B. LIKELIHOOD OF SUCCESS ON THE MERITS

A claim for breach of contract must allege (1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance; (3) that the defendant breached the terms of the contract; and (4) that the plaintiff was damaged as a result of the breach. *See* Restatement (Second) of Contracts § 203 (2007); *Calloway v. City of Reno*, 116 Nev. 250, 993 P.2d 1259, 1263 (Nev. 2000) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement."). An enforceable contract requires: (1) an offer and acceptance; (2) meeting of the minds; and (3) consideration. *May v. Anderson*, 121 Nev. 668, 119 P.3d 1254, 1257 (Nev. 2005).

Here, Plaintiff has demonstrated that a valid contract likely existed between the parties. After accepting Plaintiff's invitation through DomainAgents to negotiate, Defendant made a firm offer to sell the Wormhole Domain for $50,000, which Plaintiff accepted. (*See* Purchase Agreement, Ex. 15 to TRO, ECF No. 7-15). This demonstrates that the purchase agreement was likely supported by valid, bargained-for consideration: an exchange of something of value from Defendant (the Wormhole Domain) for something of value from Plaintiff ($50,000). *See May v. Anderson*, 121 Nev. 668, 672 (2005) ("Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of them imps, and consideration."). Further, Plaintiff has repeatedly demonstrated its intent to perform on this contract through its communications with DomainAgents and Defendant. (*See, e.g.*, Letter, Ex. 14 to TRO) (confirming that Plaintiff "fully intends to pay the entire amount agreed."). However, Plaintiff cannot complete the transaction until Defendant sets up his Escrow.com account, which he has yet to do. (Sale Confirmation at 1, Ex. 12 to TRO, ECF No. 7-12); (Printout Messages at 4, Ex. 13 to TRO).

As to breach, Plaintiff expressly communicated his refusal to transfer the Wormhole Domain at the agreed upon price of $50,000. (*See* Printout Messages at 1, Ex. 13 to TRO, ECF No. 7-13).  Instead, Defendant is now demanding a higher price for the Wormhole Domain, even though he already agreed to a price of $50,000, which is a breach of the purchase agreement.  Finally, Plaintiff has demonstrated that it was likely damaged as a result of Defendant's breach because it lost access to a unique and valuable asset that it can only obtain from Defendant.  As such, the Court finds that the first *Winter* factor—likelihood of success on the merits—weighs in Plaintiff's favor.

### C. LIKELIHOOD OF IRREPARABLE HARM

Plaintiff also argues that it will be irreparably harmed if the Court declines to issue a temporary restraining order. (TRO 9:24–10:21).  To carry its burden, Plaintiff must also establish that it will likely suffer irreparable harm without the issuance of injunctive relief. *Winter*, 555 U.S. at 21.  Plaintiff must "demonstrate a likelihood of irreparable injury—not just a possibility—in order to obtain preliminary relief." *Id*.

Here, given Defendant's communicated belief that he is not bound by the terms of the purchase agreement, the Court can reasonably infer that he would sell the Wormhole Domain to another interested party if he is not restrained from doing so.  Upon the transfer of the Wormhole Domain to another party, Plaintiff would have no legal recourse against that subsequent purchaser through which to obtain the Wormhole Domain.  Accordingly, the likelihood of irreparable harm element is satisfied. *See, e.g.*, *Las Vegas Sands Corp. v. Ming*, 360 F. Supp. 3d 1072, 1080 (D. Nev. 2019) ("Irreparable harm is also implicated where there is a potential for an infringing defendant to transfer domain names to a different registrar outside of a court's jurisdiction."); *Hakkasan LV, LLC v. Wang*, No. 2:13-cv-01122-GMN, 2013 WL 3944175, at *3 (D. Nev. July 30, 2013) ("Plaintiffs will suffer irreparable injury if the Court does not require the domain name registrar . . . to lock the infringing . . . domain name pending

litigation of this matter . . . because Defendants could transfer the Infringing Domain Name to another registrant or registrar.").

### D. BALANCE OF EQUITIES

Here, the balance of the equities tips in favor of Plaintiff. The issuance of a temporary restraining order merely prevents the sale or transfer of the Wormhole Domain pending a preliminary injunction hearing on this matter. Defendant will not be prohibited form otherwise using this asset. Conversely, if a temporary restraining order does not issue, Defendant would have the ability to dispose of the Wormhole Domain, the loss of which will cause Plaintiff irreparable harm.

### E. PUBLIC INTEREST

"The public interest analysis for the issuance of [injunctive relief] requires [district courts] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011) (citation omitted). In this case, the Court finds no such public interest that would be injured by the issuance of such injunctive relief. To the contrary, public interest strongly favors enforcing contracts. *See, e.g.*, *NAC Foundation, LLC v. Jodoin*, No. 2:16-cv-1039-GMN-VCF, 2016 WL 4059648, at *2 (D. Nev. July 26, 2016) ("an injunction in this instance protects the public's interest in the integrity and enforceability of contracts.").

In sum, the Court finds that Plaintiff has satisfied the requirements of imposing a temporary restraining order on Defendant. The Court accordingly grants a limited temporary restraining order to: (1) prohibit Defendant from selling, transferring, or otherwise encumbering the Wormhole Domain; and (2) lock the Wormhole Domain with the Network Solutions, LLC registrar.

//

//

**F. BOND**

The issuance of a temporary restraining order is conditioned on the movant posting security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "The district court is afforded wide discretion in setting the amount of the bond, and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003). Further, a strong likelihood of success on the merits may favor "a minimal bond or no bond at all." *California v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985).

Given the likelihood that Plaintiff will succeed on the merits of its breach of contract claim and the limited hardship that a temporary restraining order will impose, there is a low probability that Defendant will suffer damages caused by an improperly granted temporary restraining order. The Court therefore declines to order a bond in this case.

**IV. CONCLUSION**

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Temporary Restraining Order, (ECF No. 7), is **GRANTED**. Defendant is **TEMPORARILY RESTRAINED** from selling, transferring, or otherwise encumbering the domain name "www.wormhole.com," unless Defendant is selling or transferring it to Plaintiff.

**IT IS FURTHER ORDERED** that Defendant shall immediately inform the registrar Network Solutions, LLC that the Wormhole Domain shall be placed on lock for the duration of this Order.

**IT IS FURTHER ORDERED** that Plaintiff shall serve Defendant with a copy of this Order by Monday, April 11, 2022.

**IT IS FURTHER ORDERED** that Defendant shall have until Friday, April 15, 2022, to file his response to Plaintiff's Motion for Preliminary Injunction, (ECF No. 8). Thereafter, Plaintiff shall have until Monday, April 18, 2022, to file its reply.

**IT IS FURTHER ORDERED** that this matter is set for hearing on Plaintiff's Motion for Preliminary Injunction IN PERSON on Wednesday, April 20, 2022, at 1:30 P.M. in Las Vegas Courtroom 7D.

**DATED** this __8__ day of April, 2022.

_____
Gloria M. Navarro, District Judge
United States District Court